| | | |
|---|---|---|
| Ebony Eskridge, | ) | |
| | ) | No. 11 C 7308 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| The Chicago Board of Education, | ) | |
| Linda Walker, Jerrold Washington, | ) | |
| and Paul Jones, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ebony Eskridge, an engineer at Garrett Morgan Elementary School ("Morgan") from September 2009 to February 2011, alleges that former Morgan principals Linda Walker and Jerrold Washington, the Chicago Board of Education (the "Board"), and Board employee Paul Jones, (collectively, "Defendants") denied her requests to work overtime after the school day because she was a woman and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), and the Equal Pay Act of 1963, 29 U.S.C. § 206(d), as amended (the "Equal Pay Act"). R. 8. Presently before the Court is Defendants' motion for summary judgment. R. 46. For the reasons explained below, Defendants' motion is granted.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The following background is a summary of the material facts, viewed in the light most favorable to Eskridge.

## Background

In 1998, the Board and Chicago Park District (the "Park District") entered into an Intergovernmental Agreement, which allowed the Park District and the Board to use each other's property for various programs. R. 72 at 2-3 (¶ 8). The Board and the Park District agreed that neither party would pay a fee to the other as a result of the usage. *Id.* at 3 (¶ 8). Morgan was one of the schools that the Park District used to host programs—it became Mahalia Jackson Park after the school day ended. *Id.* at 8 (¶ 36). The Chicago Park District Program ("CPDP" or the "Park

District program") generally operated an afterschool program at Morgan on Monday through Friday from 2:00 p.m. to 8:00 p.m. *Id.* at 3 (¶ 10).

Under Principal Walker, there was one engineer staffed at Morgan. R. 72 at 3 (¶ 11). The engineer's hours were 6:00 a.m. to 2:00 p.m. *Id.* If the engineers worked during the afterschool Park District program—after their regularly scheduled time of work—they were paid overtime. R. 48-1 at 25:19-22.[1] The engineers maintained the school heating and cooling, performed repairs at the school, and scheduled custodial staff. R. 81 at 7 (¶ 9). The custodians staffed at Morgan worked eight hour shifts on a sliding schedule, so their shifts started at staggered times from 5:00 a.m. through the early afternoon. R. 72 at 3 (¶ 12). Their duties were to keep the facilities at Morgan clean. R. 48-1 at 24:18-20.

The Board had funding, identified by a "bucket number" which could be used to pay for overtime during the Park District program hours. R. 81 at 3 (¶ 4); R. 48-1 at 20:10-22, 57:16-23. When Park District programs were conducted at Morgan, there were normally two custodial workers present for the program. R. 48-1 at 22:10-14. Principal Walker testified that their tasks were to clean and close the building. *Id.* 23:6-10. The custodians were not paid overtime during the Park District programs unless they had to stay beyond their regular eight hours shifts for an emergency because their shifts included the Park District program hours. *Id.* at 25:23-27:1.

---

[1] Where applicable, page numbers in exhibits are referred to by the page number assigned by the electronic filing system.

Linda Walker was the principal of Morgan from May 2002 through June 30, 2010. R. 72 at 1 (¶ 2). From 2003 until August 2005, for unexplained reasons, Principal Walker was absent from Morgan School and was not supervising the staff. *Id.* at 4 (¶ 15). When Principal Walker returned to the school in October 2005, she was informed by the Office of Operations that the school engineer, Filiberto Hernandez, had accumulated over $4,000 in overtime pay. *Id.* at 4 (¶ 16). Hernandez transferred to another Chicago Public School in 2006. R. 72 at 5 (¶ 19).

In October 2006, Principal Walker hired Desmond Hill as the engineer at Morgan School. R. 72 at 5 (¶ 20). Principal Walker testified that she "had allowed Mr. Hill to do payroll, which was customary for engineers to do for their department. And it was brought to [her] attention that he was arbitrarily using Park District at his discretion. Whenever he wanted to work, he was -- so [she] had to take that task away from him." R. 48-1 at 58:13-22. Principal Walker further testified that Hill was "abusing" the administration of payroll. R. 48-1 at 64:19-65:6. Walker's testimony suggests that Hill was inputting payroll for CPS, but was also working and entering overtime during the Park District program at his discretion. Hill resigned after an investigation about his time-keeping irregularities, including "double-dipping," because he was seen at other locations during the time that he was scheduled to work at Morgan. R. 72 at 5-6 (¶ 23). Principal Walker testified that this caused her to be more vigilant about the use of overtime. R. 72 at 5-6 (¶ 23); R. 48-1 at 59:11-14.

In September 2009, Principal Walker hired Eskridge as an engineer for Morgan. R. 72 at 2 (¶ 7). When Eskridge was hired, Principal Walker told her that "overtime was not needed for the engineer at Morgan." R. 72 at 6 (¶ 25). It was Principal Walker's practice to be at the school to supervise the custodians during the Park District program, after the school day ended. R. 48-1 at 50:12-19. If Principal Walker was not there, there was no supervisor to oversee the custodial staff that worked until the end of the Park District program. R. 48-1 at 53:3-9. In September 2009, Eskridge asked the assistant principal, Joseph Haley, if she could work overtime during the Park District program and he approved it. R. 72 at 6 (¶ 26).

On October 22, 2009, Principal Walker issued Eskridge a letter of concern. R. 72 at 7 (¶ 29). The letter asked Eskridge to explain her use of overtime and why, after Principal Walker and Eskridge had "a couple" of conversations about how overtime hours were used at Morgan, Eskridge stayed past her 2:00 p.m. quitting time. *Id.* However, Principal Walker approved overtime for Eskridge in December 2009 for special projects and emergencies. R. 72 at 6 (¶ 27). On December 24, 2009, Eskridge sent an email to her union president, William Iacullo, stating that she would like to file a grievance because "Ms. Walker only wants me to use the park district overtime bucket when I have a special project to do that she will approve of." R. 72 at 7 (¶ 30). Iacullo responded by email stating that "[We] have had this issue with [Principal Walker] before." R. 72 at 7 (¶ 31).

Principal Walker approved overtime for Eskridge in January 2010 for performing "preventative maintenance" around the school. Eskridge testified that she also worked overtime in February 2010. R. 72 at 6 (¶ 27). Eskridge's overtime sheets also show that she worked overtime in March, April, and June of 2010. R. 72 at 6-7 (¶ 28). On March 17, 2010, Principal Walker issued Eskridge a cautionary notice regarding her use of overtime during the Park District program hours. *Id.* at 7 (¶ 32).

On March 31, 2010, Iacullo filed a grievance on behalf of Eskridge. R. 72 at 7 (¶ 33). The grievance alleged that Eskridge was "being denied her contractual right to be present and on duty for occupancy of Non Board programs that are funded with fees for usage of the building outside normal hours. Specifically, the Chicago Park District." *Id.* at 8 (¶ 34). According to the agreement between the Board and International Union of Operating Engineers, AFL-CIO, Local 143-143B (the "CBA"), Section 7-2.2 "the engineer-in-charge or his/her designee shall be present and on duty for such occupancies when non-BOARD programs *provide for fees paid for building usage* pursuant to the permit procedure." R. 72 at 3 (¶ 9) (emphasis added).

On May 11, 2010 a grievance meeting was held. R. 72 at 8 (¶ 35). On May 24, 2010, Principal Walker denied the grievance and wrote a letter explaining her reasoning, which stated:

> Ms. Eskridge is not being denied her contractual rights to be present and on duty for occupancy of Non-Board programs that are funded with fees for usage of the building outside of normal hours. Specifically, the Chicago Park District. There are no fees being paid. The Chicago Public Schools and specifically Garrett A. Morgan have an intergovernmental agreement with the Chicago Park District.

6

> Our gym becomes Mahalia Jackson Park at 2:00 p.m. daily and no
> funds are exchanged.

R. 72 at 8 (¶ 36). Eskridge appealed Principal Walker's decision to the Office of Employee Relations ("OER"). R. 72 at 8 (¶ 37). On June 7, 2010, a hearing took place on Eskridge's appeal. *Id.* Eskridge, union representative Don Colagrossi, Principal Walker, and OER Hearing Officer Alan Grossman attended. *Id.*

On June 30, 2010, while the OER decision was pending, Principal Walker retired as principal of Morgan. R. 72 at 8 (¶ 38). Jerrold Washington became principal of Morgan effective July 1, 2010, through January 1, 2012. R. 72 at 2, 8 (¶¶ 3, 38). When Principal Washington became principal, Eskridge requested overtime for the Park District program. *Id.* at 8 (¶ 39). Principal Washington granted Eskridge's requests and Eskridge worked Park District program overtime in September and October 2010. *Id.* at 9 (¶ 40).[2] On an unspecified date around September 2010, Eskridge requested that her husband, Donte Eskridge ("Donte"), an engineer at another school, be allowed to work her overtime hours at Morgan. *Id.* at 9 (¶ 41). Principal Washington did not believe that was appropriate and he declined the request. *Id.* at 9 (¶ 42).

On October 5, 2010, the OER issued a grievance decision on Eskridge's case. R. 72 at 9 (¶ 44). OER determined that because the Park District did not pay a fee, the CBA did not require the engineer-in-charge or his/her designee to be in the

---

[2] Defendants stated (and plaintiff did not contest) in their Statement of Facts that "Principal Walker granted Plaintiff's requests . . . in September and October 2010," R. 48 ¶ 40, but the Court assumes the parties meant to state that Principal Washington granted the requests as Defendants cite Principal Washington's deposition and because Principal Walker had retired by that time.

building. *Id.* at 9 (¶ 45). Principal Washington showed the October 5, 2010 decision to Eskridge and told her that she could continue to work overtime during the Park District program hours if she requested it in advance and he authorized it. R. 72 at 9 (¶ 46). On November 17, 2010, Eskridge filed a charge with the EEOC alleging sex discrimination in violation of Title VII. R. 72 at 10 (¶ 51). The box for retaliation was not checked on Eskridge's EEOC complaint. *Id.* In early February 2011, Eskridge transferred to Farragut High School. R. 72 at 2 (¶ 5). At some point after Eskridge left Morgan, Dwayne Craig worked as an engineer at Morgan under Principal Washington. R. 48-2 at 24:2-5.

On July 18, 2011, the EEOC issued Eskridge a notice of right to sue letter. R. 1-1. Eskridge filed her lawsuit on October 14, 2011. R. 1. She filed an amended complaint on November 18, 2011. R. 8. Eskridge alleges that the Defendants discriminated against her based on sex by denying her access to overtime during afterschool Park District programs and  preventing her from receiving the corresponding overtime pay. Defendants argue that Eskridge's claims of discrimination are unfounded.

## Analysis

### I. Title VII Discrimination Claim

Title VII of the Civil Rights Act forbids an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Disparate allocation of overtime may be brought

as a claim under Title VII. *Lewis v. Chic.*, 496 F.3d 645, 653-54 (7th Cir. 2007). Whether unequal access to overtime constitutes a claim under Title VII depends on the type of work and prevalence of overtime. *Id.* Denial of "more transient" benefits may not be an adverse employment action under Title VII. *Id.* at 653 (citing *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559 (7th Cir. 2007)). However, where overtime is a significant and recurring part of the employee's total earnings or would allow the employee to move forward in his or her career, the disparate allocation of overtime may violate Title VII. *Lewis*, 496 F.3d at 654.

A plaintiff can prove illegal discrimination either directly or indirectly. *Greene v. Potter*, 557 F.3d 765, 768 (7th Cir. 2009). Eskridge attempts to establish her discrimination claim under both the direct and indirect methods of proof. The Court addresses each in turn.

### A.    Direct Method

"'Direct' proof . . . includes both evidence explicitly linking an adverse employment action to an employer's discriminatory animus . . . and circumstantial evidence that would permit the trier of fact to infer that discrimination motivated the adverse action." *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013) (internal citations omitted). To illustrate the idea that circumstantial evidence must permit the inference of discrimination, the Seventh Circuit has used the metaphor of a mosaic "whose individual tiles add up to a complete picture." *Id.* However, there is no "esoteric" mosaic test. *Id.* Put simply, the circumstantial evidence "must be strong enough, taken as a whole, to allow the trier of fact to draw the necessary

inference." *Id.* Typical kinds of evidence used for this purpose include "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* at 995-96 (quoting *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011)).

In opposing a motion for summary judgment, a plaintiff "must produce enough evidence, whether direct or circumstantial, to permit the trier of fact to find that [her] employer took an adverse action against [her] because of [her protected class]." *Morgan*, 724 F.3d at 997. "If the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate, and the plaintiff may prevail at trial even without producing any 'direct' proof." *Id.* at 996.

Eskridge concedes that she has no direct evidence of discrimination. She does not contend that anyone told her she was denied overtime because of her sex or that anyone made statements to her regarding her sex at all. R. 72 at 10-11 (¶ 52). Instead, Eskridge cites circumstantial evidence of what she characterizes as: "suspicious timing, ambiguous behavior, . . . that similarly situated employees received more favorable treatment by Defendants[,]" and claims "that Defendants' stated reason for the difference in treatment is unworthy of belief." R. 70 at 4.

### 1. Suspicious Timing and Ambiguous Statements/Behavior

Eskridge claims that the timing of the Defendants' denial of overtime was suspicious because it was only after she was hired that "overtime was not necessary when the CPD conducted programs at Morgan." R. 70 at 4. Eskridge claims that ever since the Park District program started (in 1998), engineers worked overtime associated with the program. *Id.* She alleges that four other male engineers— Vertner Oden, Hernandez, Alessandri Kimber, and Hill—"routinely" worked overtime, and that Kimber and Hill indicated that they were able to "work the program freely." *Id.*

Eskridge's argument is not persuasive, primarily because she did work some overtime during her time at Morgan. Although Eskridge claims that she did not receive "program" overtime,[3] she admits that she requested and was approved for overtime at Morgan in September 2009 and December 2009 for "special projects and emergencies" and in January 2010 for performing "preventative maintenance around the school." R. 72 at 6 (¶27). Eskridge also testified that she worked overtime in February 2010, that her time sheets show that she worked overtime in March, April, and June 2010, and that, in total from September 2009 through February 2011 (when she transferred from Morgan School), she worked a total of 180.40 hours of overtime. R. 72 at 6-7 (¶¶ 26-28).

---

[3] In her declaration, Eskridge claims that the overtime hours for the CPDP "did not compare" to the other overtime hours because "the CPDP overtime was constant and the other overtime was random depending on the circumstances." R. 72-10 ¶ 5. This distinction boils down to the number of overtime hours worked, and Eskridge concedes that she did indeed work some overtime hours during her time at Morgan. R. 72 at 6-7 (¶¶ 26-28).

Moreover, the circumstances surrounding Principal Walker's greater vigilance in overtime policy—based on the abuses of the two engineers who preceded Eskridge—belie Eskridge's suggestion of suspicious timing. Principal Walker became more vigilant after she learned of the overtime abuses by Hernandez and Hill, who transferred and resigned, respectively, from their positions as engineers at Morgan.

Similarly, Kimber worked at Morgan prior to Principal Walker's discovery of the Hernandez and Hill abuses. Kimber states in his affidavit that he was employed as an engineer with the Board "on or around 2003-2004," prior to Principal Walker's discovery of Hill's payroll abuse. R. 72-11 ¶ 4. Eskridge also claims that Oden worked as an engineer at Morgan "several years prior" to her. R. 70 at 8. If Oden in fact worked overtime as an engineer at Morgan (for which no evidence has been presented), it was also necessarily prior to Principal Walker's discovery of the Hernandez and Hill abuses.[4] The increased scrutiny of overtime requests made after these abuses is not suspicious at all.

Eskridge also claims that after she left Morgan in February 2011, Dwayne Craig and another engineer (whom she does not identify by name) worked overtime hours at Morgan until the Park District program ended in 2012 "on a regular basis with no restriction." R. 70 at 5. However, Eskridge fails to identify any evidence

---

[4] Moreover, Eskridge conceded that she had no direct knowledge of Oden's working overtime for Park District functions. R. 72-4 at 10-11.

about the circumstances or number of overtime hours they worked.[5] No evidence has been presented that male employees were treated according to a different policy than Eskridge was—under either Principal Walker or Principal Washington. Eskridge has failed to assert evidence suggestive of suspicious timing of the policy in place during Principal Walker's tenure to carefully police overtime hours after the abusive practices of Hill and Hernandez. This policy appears gender neutral in its application.

Eskridge contends that Defendants' "behavior" in "handling" overtime "presents several ambiguities." R. 70 at 5. Although the allegation is vague, Eskridge is apparently claiming as circumstantial evidence that it is "unclear" why she would not be able to work overtime for the program if funds were allocated to the Park District for such purpose. *Id.* Eskridge alleges that Principal Walker chose

---

[5] In her response brief, Eskridge contends that Defendants failed to produce payroll records for engineers that worked overtime at Chicago Public Schools from 2000-2008 and 2011-2012. R. 70 at 7-8, n. 2. Eskridge claims that she made a formal discovery request, requested the documents during her deposition, and made "a recent request," *id.*, but makes no mention of seeking to compel production of such payroll records during the discovery period of this 2011 case. In a footnote, she requests that the Court deny Defendants' motion for summary judgment and in the alternative make a negative inference against Defendants "for failure to provide said documents." *Id.* Eskridge's requested remedy, however is improper. If Eskridge wanted to obtain the documents, she should have filed a motion under Federal Rule of Civil Procedure Rule 56(f) to continue discovery setting forth a justification for a continuance. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 318 (7th Cir. 2003); *see also Converso v. United Am. Nurses,* No. 09-CV-7336, 2010 WL 5139082, at *5 (N.D. Ill. Dec. 10, 2010) (having failed to file a Rule 56(f) motion, plaintiffs could not oppose summary judgment on the ground that discovery was necessary). The Court will draw no negative inference when Eskridge' failed to file such a motion or bring the issue before the Court during discovery.

not to exercise her discretion to give Eskridge overtime opportunity, instead using the funds for reasons outside their "designated purpose." *Id.*

Eskridge further argues that Principal Walker's testimony that she became more vigilant about overtime after the abuses of Hill and Hernandez is "not relevant" "in light of the program's history, designated funds, and consistent hours." R. 70 at 5. Despite Eskridge's characterization of Principal Walker's testimony as ambiguous, Eskridge does not dispute that Principal Walker used her "discretion" in allocating overtime after the abuses of Hill and Hernandez. R. 70 at 5-6.

Eskridge's identification of "ambiguous behavior" is misplaced. She fails to identify any ambiguous statements or behavior that would serve as circumstantial evidence to support allegations of discrimination—statements or behavior towards others in the protected group (women). *See Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) ("[th]e type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: . . . ambiguous statements or behavior *towards other employees in the protected group*") (emphasis added). Moreover, there is nothing ambiguous about Principal Walker's testimony about her overtime vigilance.[6]

---

[6] Eskridge suggests that "[a]ny concern about the misuse of overtime by two prior engineers should be directed at Principal Walker for failure to supervise her employees" and monitor their overtime. R. 70 at 5-6. Eskridge claims that although Principal Walker determined certain overtime to be wasteful, that was not a basis to deny Eskridge overtime in the Park District program. R. 70 at 6. This is ludicrous. Of course it is a basis to deny overtime in general, and Eskridge has not shown that she was singled out on the basis of her sex to not receive overtime.

## 2. Systematically Better Treatment for Similarly Situated Employees

Finally, in a related argument, Eskridge asserts that the male engineers in her position before and after her time at Morgan were "similarly situated to her and received more favorable treatment." R. 70 at 6. She claims that they worked "routine" overtime for the program without advance request and averaged two to four hours of overtime per day.[7] *Id.*

A plaintiff has the "burden . . . to establish the similarity between [her]self and the proposed comparable employees." *Peters v. Renaissance Hotel Oper. Co.*, 307 F.3d 535, 546 (7th Cir. 2013). Eskridge does not name specific employees in her argument under the direct method, but in her prima facie argument under the indirect method, Eskridge names Oden, Hill, Hernandez, Kimber, and Craig[8]—"the

---

[7] Under the direct method, Eskridge is not required to produce evidence that similarly situated employees were systematically treated better. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529-30 (7th Cir. 2008). Nevertheless, such evidence remains relevant to the direct method and as such, the direct and indirect method analyses overlap. *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 851 (7th Cir. 2010).

[8] Defendants note that Eskridge also identifies Dennis Rounds as a comparator and argue that he is not a comparator because he was never staffed at Morgan and did not report to the same supervisor as Eskridge. R. 47 at 10. While Eskridge stated in her deposition that Rounds was an engineer treated more favorably than she was at Morgan, R. 48-4 at 41, 56, she makes no reference to Rounds in her amended complaint or her response to summary judgment. Further, she presents no evidence about Rounds or his alleged overtime work at Morgan. R. 8, 70. To the extent that there are additional individuals, including Rounds, to whom Eskridge would compare herself, her claims are either conclusory or unclear. *Oest v. Ill. Dep't. of Corrs.*, 240 F.3d 605, 615 (7th Cir. 2001) (plaintiff must offer specific evidence rather than conclusory assertions of similarly situated employees).

former and current engineers at Morgan School"—as employees to whom she is similarly situated. R. 70 at 7.[9]

Although a similarly situated employee need not be "identical," *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008), he must be "directly comparable to the plaintiff in all material respects . . . ." *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (quoting *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009)). Plaintiff must be "similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617 (7th Cir.2000). Typically, the plaintiff must show that the other employee "shared the same supervisor, performance standards, and 'engaged in similar conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them.'" (quoting *Radue*, 219 F.3d at 617-18). Individuals subject to a different policy or standards than the plaintiff are not similarly situated. *South v. Ill. Env't. Prot. Agency*, 495 F.3d 747, 752 (7th Cir. 2007) (noting employees are typically

---

[9] Defendants contend that Eskridge improperly cites her own Exhibit J, Donte Eskridge's affidavit, at page six of her response by citing to R. 70 ¶ 12. Specifically, Defendants claim that the citation is improper because Exhibit J is an incomplete, unsigned declaration which may not be considered on summary judgment. R. 80 at 4 n.5.

Even if the Court were to consider Donte's statements in Exhibit J about engineers at other schools working regular overtime, they would not save Eskridge's "similarly situated" argument. She has not presented evidence that engineers at other schools were employed at Morgan or worked overtime under Principal Walker or Principal Washington at Morgan. *See, e.g., South v. Ill. Env't. Prot. Agency*, 495 F.3d at 752 (noting employees are typically similarly situated if they had the same supervisor, were subject to the same employment standards and engaged in similar conduct).

similarly situated if they had the same supervisor, were subject to the same employment standards, and engaged in similar conduct); *Thomas v. Norfolk S. Ry. Co.*, No. 09-CV-7383, 2013 WL 791449, at *5 (N.D. Ill. Mar. 4, 2013) (holding employee must be under same policy to be similarly situated); *Johnson v. Koppers, Inc.*, No. 10-CV-3404, 2012 WL 1906448, at *8 (N.D. Ill. May 25, 2012) (observing similarly situated comparator must be "subject to the same standards of conduct").

Eskridge fails to present sufficient factual support that either Oden or Craig worked overtime hours at Morgan. She does not present testimony or an affidavit from either. Donte Eskridge's affidavit (whose admissibility Defendants dispute) states that Oden and Craig "regularly" worked at Morgan and that Craig worked four hours of overtime per day for three days a week from July 2011 to September 2012. Those claims—even if specified to assert that Craig worked those overtime hours at Morgan—are inadmissible as hearsay statements offered to prove the truth of the matters asserted therein, as they fail to show how Donte had personal knowledge of Oden and Craig's overtime at Morgan. Fed. R. Evid. 801(c) and 802; *Martin v. Shawano–Gresham Sch. Dist.,* 295 F.3d 701, 713 (7th Cir. 2002) (statements in affidavit premised on hearsay and based on the affiant's "understanding" are inadmissible and cannot be used to defeat a motion for summary judgment).

Eskridge's remaining comparators—Kimber, Hill, and Hernandez—also are not similarly situated. Kimber's affidavit states that he was employed as an engineer with the Board "on or around 2003-2004," that he worked overtime during

the Park District program at Morgan, that "the overtime during the CPDP was almost daily for 2-4 hours," and that he did not have to make a request to work overtime hours or get pre-approval from Principal Walker. R. 72-11 ¶¶ 4, 6, 13. This implies that Kimber worked two to four hours of Park District overtime during his time at Morgan, but Kimber does not explicitly state where he worked the overtime.[10] Moreover, although Principal Walker does not identify the month in 2003 that she left Morgan, she was absent from some point in 2003 through August of 2005. R. 72 at 4 (¶ 15.). Kimber's employment as an engineer with the Board "on or around 2003 to 2004" would mean that if he worked under Principal Walker at Morgan, it would have been at some point in 2003, prior to the incidents with Hill and Hernandez which caused Principal Walker to become more vigilant about the overtime policy. *See, e.g., Thomas v. Norfolk S. R. Co.*, No. 09 CV 7383, 2013 WL 791449, at *5 (N.D. Ill. Mar. 4, 2013) (finding comparator was not relevant because he was subject to a different policy than plaintiff); *see also Snipes v. Ill. Dep't of Corr.,* 291 F.3d 460, 463 (7th Cir. 2002) (affirming district court's conclusion of lack of commonality and noting that the difference in supervisors under whom plaintiff and others worked resulted in disparate application of and adherence to employer's policy and process).

Hill and Hernandez also were not similarly situated to Eskridge. They engaged in misconduct which was the basis for Principal Walker's vigilance

---

[10] In his affidavit, Kimber states that he worked overtime during the Park District program at Morgan and states in another paragraph that "the overtime for the CPDP was almost daily for 2-4 hours." R. 72-11 ¶¶ 6, 13.

regarding the overtime policy. Until Principal Walker returned from her leave in October 2005, she was clearly not Hernandez's supervisor. When Principal Walker returned to Morgan from leave she found out that Hernandez had accumulated $4,000 in overtime pay. R. 72 at 4 (¶ 16). After Iacullo filed a grievance about the overtime issue, Hernandez transferred to another Chicago Public School. *Id.* at 5 (¶ 19).

Hill's time-keeping irregularities and Principal Walker's vigilance about the overtime program in response distinguish him from Eskridge. Hill also was not similarly situated to Eskridge because he had the additional responsibility for payroll entry for himself and custodians, which Eskridge does not claim that she was permitted to do. R. 72 at 5 (¶22). Principal Walker later discovered Hill was misusing the payroll entry system and she took that responsibility away from him. *Id.* at 5 (¶ 22). Hill resigned following an investigation by the Board that he was "double dipping" when he was seen at other locations when he was supposed to be working at Morgan. R. 72 at 5-6 (¶ 23).

Eskridge has not met her burden to show that the other male engineers were similarly situated and has not presented evidence that they were systematically treated better than she was with respect to overtime. Eskridge's circumstantial evidence, taken together, would not allow a trier of fact to draw the necessary

inference that discrimination motivated Defendants in depriving her of overtime work.[11]

## B.     Indirect Method

The indirect method of proof involves three steps. First, the plaintiff must produce evidence establishing a prima facie case by demonstrating that: (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside of the protected class more favorably. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012). Second, if a plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the employment action. This has been described as "[a] light burden." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). Third, once the employer has produced a legitimate, nondiscriminatory reason for its decision, the plaintiff then has the burden of producing sufficient evidence to show that reason to be pretextual. *Id.*

### 1. Eskridge's *Prima Facie* Case

As discussed above in the direct method analysis, Eskridge has not produced evidence that the five male engineers she identifies—Oden, Hill, Hernandez, Kimber, and Craig—were similarly situated to her and treated more favorably than

---

[11] Eskridge claims that with regard to suspicious timing, Defendants' bases for their "deviation from the customary practice," including Principal Walker's discretion and the abuses of overtime by past engineers, are nothing more than pretext. R. 70 at 4-5. These allegations of pretext, along with Eskridge's pretext allegations under the indirect method, discussed *infra* pp. 20-22, do not contribute to an inference of discrimination under the direct method.

she was. *See, e.g., Egonmwan v. Cook Cnty. Sheriff's Dep't,* 602 F.3d 845, 851 (7th Cir. 2010) (noting that the "similarly situated" and "pretext" analyses are substantially the same under both the direct and indirect method). Accordingly, she cannot establish a *prima facie* case and her claim fails.

Even if Eskridge could establish a *prima facie* case, Defendants have provided a legitimate, non-discriminatory reason for the policy—Principal Walker became "vigilant" about the overtime after her discovery of the abuses of overtime and payroll by Hernandez and Hill. Even if Principal Walker's business decisions were "ill-considered or unreasonable," if she honestly believed the nondiscriminatory reasons she gave for her actions, pretext does not exist. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) (citing *Clay v. Holy Cross Hosp.*, 253 F. 3d 1000, 1007 (7th Cir. 2001)).

Eskridge argues that Defendants' reasoning is baseless because the program "was well-established, and operated at almost 38 schools with numerous engineers that worked overtime without issue." R. 70 at 12. She contends that Defendants fail to explain why the overtime is not warranted on a "regular" basis at Morgan since it has an afterschool Park District program. Eskridge also asserts that Defendants fail to explain why she would not be able to work overtime hours for the program when funds were allocated to compensate the engineers for overtime. *Id.* She repeats her claim that the onus should have been on Principal Walker to better supervise and monitor the overtime hours worked and the amount reported to payroll. *Id.* at 12-13.

Eskridge's argument is not convincing. Courts are not "superpersonnel departments." *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) (quoting *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)). As the Seventh Circuit has repeatedly stated, "it is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 (7th Cir. 2008) (quoting *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005)). A plaintiff therefore has the burden of establishing that "the employer's proffered reasons are factually baseless, were not the actual motivation for the [adverse action] in question, or were insufficient to motivate the [adverse action]." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 538 (7th Cir. 2002) (quoting *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888-89 (7th Cir. 2001)). Eskridge has presented no rational basis for concluding that Principal Walker's proffered reasons for being vigilant with the policy were pretextual or unworthy of belief. *Walker v. Bd. of Regents of Univ. of Wisc. Sys.*, 410 F.3d 387, 395 (7th Cir. 2005).

Eskridge's discrimination claim therefore also fails under the indirect method.

## II. Title VII Retaliation Claim

Eskridge claims that she was subject to retaliation for filing a March 31, 2010 grievance and November 17, 2010 EEOC charge against Defendants. R. 70 at 15. Defendants contend that they did not retaliate against Eskridge. R. 47 at 16.

Under Title VII, it is unlawful for an employer "to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). As with a Title VII discrimination claim, a plaintiff can establish unlawful retaliation either directly or indirectly (proceeding under a burden-shifting method). *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012). Eskridge attempts to establish her retaliation claim under the direct method of proof. R. 70 at 15.

### A. Direct Method

To prove a retaliation claim under the direct method, the plaintiff "must present direct evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). "As in the context of a disparate treatment claim, fulfillment of the prima facie case shifts the burden to the defendant to articulate a non-retaliatory action for the challenged action. If the defendant does provide a legitimate explanation, the burden shifts back to the plaintiff to show evidence that the proffered reason is pretextual." *Hoffman-Dombrowski v. Arlington Int'l Racecourse*, Inc., 254 F.3d 644, 653 (7th Cir. 2001).

Relying on direct evidence, Eskridge asserts that Principal Walker retaliated against her in multiple ways for filing a grievance and an EEOC charge against the Defendants. Specifically, Eskridge contends that Principal Walker denied her overtime. Eskridge claims that when she questioned Principal Walker about that

denial, Principal Walker filed cautionary notices against her and took away her responsibilities to enter work orders and to manage and write up the custodial staff. R. 70 at 15.

Complaining to an employer about impermissible discrimination and filing a charge of discrimination with the EEOC are statutorily protected activities. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Eskridge's grievance, however, said nothing about sex discrimination. It stated that she was being denied her "contractual rights to be present and on duty for occupancy of Non Board programs that are funded with fees for usage of the building outside normal hours." R. 48-9 at 2. It further alleged that she had been told that she was not permitted to work after her regular scheduled hours even though there were contractors in the building. It also requested that Eskridge be made whole by "resuming the terms of her contractual rights" *Id.*

Because Eskridge's March 31, 2010 grievance does not indicate that any discrimination occurred because of her age, race or sex, it cannot form the basis for protected activity. *See, e.g., Tomanovic*, 457 F.3d at 663 ("Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class"); *see also Williams v. City of Chic. Bd. of Educ.*, No. 10-CV-7105, 2012 WL 3023313, at *7 (N.D. Ill. July 24, 2012) (finding that neither plaintiff's grievance form or addendum to his union could form the basis for protected activity because neither document indicated that

the alleged discrimination took place because of his age, race, or sex (citing *Kodl,* 490 F.3d at 563)); *Onofrei v. Gen. Sec. Servs. Corp.*, No. 04-CV-5560, 2005 WL 3312599, at *9 (N.D. Ill. Dec. 5, 2005)) (finding plaintiff's union grievances, attached to her complaint, did not constitute activity protected under Title VII, including sex and race discrimination, where they did not reference any discrimination prohibited by Title VII).

Additionally, as Eskridge concedes, she did not check the box for "retaliation" in her November 17, 2010 EEOC charge. Generally, a Title VII plaintiff may bring only those claims included in her EEOC charge, *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994), or that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir.) (en banc), *cert. denied*, 429 U.S. 986 (1976). The Seventh Circuit has held that failure to include alleged retaliatory action in the EEOC charge that took place prior to that charge precludes the inclusion of such claims in a retaliation claim. *See McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996) (holding that the retaliatory acts which occurred prior to plaintiff's original EEOC charge, but which were not included therein, could not then serve as the basis of the retaliation claim alleged in her complaint "because each of those incidents of retaliation could have been—and should have been— included in her administrative charges"). The Court may, however, consider alleged retaliatory actions that took place after Eskridge's November 17, 2010 EEOC filing, to the extent that they are reasonably related to the allegations of the charge and

grow out of such allegations. *See id.* at 483 (permitting the remaining incidents which occurred after the filing of plaintiff's amended charge to be considered as evidence of her retaliation claim, despite the fact that "retaliation" was not alleged in her administrative filings).

In her response to Defendants' motion for summary judgment, however, Eskridge does not identify any specific retaliatory action that took place subsequent to her EEOC charge. R. 70 at 15. Additionally, Eskridge testified that the only instances of retaliation against her were Principal Walker's cautionary notices, which were issued on March 17 and April 14, 2010. R. 72 at 10 (¶ 7). Those took place prior to Eskridge's EEOC charge of November 17, 2010. Therefore, the Court may not consider them.

Moreover, in her response, Eskridge names only Principal Walker as having retaliated against her. R. 70 at 15. Eskridge testified that Principal Washington and Paul Jones did not retaliate against her. R. 70 at 15, R. 72 at 10 (¶ 47). Any alleged retaliation by Principal Walker necessarily must have taken place before her June 30, 2010 departure from Morgan, which was also before Eskridge's November 17, 2010 EEOC filing. Therefore, there could be no retaliation by Principal Walker because of Eskridge's November 17, 2010 EEOC filing, and Eskridge's retaliation claim fails.

### III. Equal Pay Act Claim

The Equal Pay Act prohibits employers from paying workers of one sex less than workers of the opposite sex in return for doing the same work unless the pay

differential is justified by factors other than sex. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 600 (7th Cir. 2001) (citing *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000)). To prove a prima facie case of discrimination under the Equal Pay Act, a plaintiff must demonstrate (1) different wages were paid to employees of the opposite sex, (2) the employees performed equal work requiring equal skill, effort, and responsibility, and (3) the employees had similar working conditions. *Id.* (citing *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998)).

Once the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant to prove that the pay disparity is due to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Id.* (quoting 29 U.S.C. § 206(d)(1)). The Equal Pay Act's fourth affirmative defense "is a broad, catch-all exception that embraces a nearly limitless array of ways to distinguish among employees. *Fyfe*, 241 F.3d at 600 (citing *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1462 (7th Cir. 1994)).

Eskridge attempts to establish a prima facie case under the Equal Pay Act on the same ground underlying her Title VII claim—asserting that the "overtime compensation" that was paid to other male engineers at Morgan was different from hers because she was denied the opportunity to work the Park District overtime. R. 70 at 14.

Although the case law is sparse, in *Fyfe*, the Seventh Circuit implied that a claim for unequal access to overtime may not satisfy the wage disparity element of

the Equal Pay Act. 241 F.3d at 600 (stating that "even if the denial of the opportunity to work overtime satisfies the element of an Equal Pay Act claim – and at least one court has held that it does not," the defendant had established a basis for differential treatment) (citing *True v. N. Y. State Dep't of Corr. Servs.*, 613 F. Supp. 27, 30-31 (W.D.N.Y. 1984)). In *True*, the plaintiff received the same wages as her male coworkers, but was denied overtime assignments due to her sex. 613 F. Supp. at 30. The court found that even if the plaintiff's allegations were true, they would fail to establish a *prima facie* case under the Equal Pay Act because the plaintiff did not contend that she was paid at a lower rate than male employees, and thus the complaint did not allege any unequal wage rates. *Id.* at 31. Additional cases from New York district courts have also held that access to overtime would not satisfy the first element for an Equal Pay Act claim. *See Lee v. Syracuse,* 603 F. Supp. 2d 417, 444-45 (N.D.N.Y. 2009); *Aguilar v. N.Y. Convention Ctr. Operating Corp.,* 174 F. Supp. 2d 49, 55 (S.D.N.Y. 2001).

However, the resolution of whether Eskridge's alleged denial of overtime satisfies the element of wage discrepancy under the Equal Pay Act is not critical to the Court's analysis. Defendants assert that even if Eskridge could show a prima facie case of discrimination under the Equal Pay Act, they have satisfied their burden by providing at least one "differential based on any other factor than sex" for not providing Eskridge with blanket overtime: the CBA between the Engineer's union and the Board did not require overtime. R. 47 at 14-15. Because the Park District did not pay a fee for use of the facilities at Morgan, the Board was not

required to staff an engineer during that time or pay overtime. *Id.*[12] While this provides Defendants with a legitimate fiscal reason for not giving blanket overtime to Eskridge, Eskridge and other male engineers worked at least some overtime at Morgan. *See* 29 U.S.C. § 206(d)(1)(iv). Defendants have also explained that any difference in Eskridge's overtime hours with those of male engineers at Morgan was due to Principal Walker's increased vigilance with engineer overtime after the abuses of Hernandez and Hill. Because any alleged difference in overtime hours is clearly "due to a factor unrelated to gender," there is no violation. *Lindale v. Tokheim Corp.*, 145 F.3d 953, 957 (7th Cir. 1998).

## IV. Conclusion

Eskridge has failed to demonstrate any genuine issue of material fact on her Title VII and Equal Pay Act claims such that a reasonable juror could find in her favor. Therefore, the Defendants' motion for summary judgment, R. 46, is granted in its entirety. This action is dismissed with prejudice.

---

[12] Eskridge claims that the fee relationship between the Board and the Park District was "not regarded" except for the time period when she was employed at Morgan. R. 72 at 3 (¶8). Eskridge provides no basis for that assertion other than her own affidavit. In it, she states that "the fee relationship between the Board and the Chicago Park District was basically ignored prior to me seeking to work the routine CPDP overtime." R. 72-10 ¶ 11.

Eskridge's conclusory statement, however, lacks support in the record and factual foundation. *See, e.g., Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) (affidavits submitted in support of summary judgment must show that there is admissible evidence to support the asserted fact); *Joseph P. Caulfield & Assocs., Inc. v. Litho Products, Inc.,* 155 F.3d 883, 888 (7th Cir. 1998) (affidavits lacking in foundation are not sufficient).

ENTERED:

_Thomas M. Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 16, 2014